UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:19-CR-51 |
| v. | ) | 3:21-CR-51 |
| | ) | |
| | ) | JUDGES Varlan/Poplin |
| CHARLES BROOKS, JR. | ) | |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, CHARLES BROOKS, JR. and the defendant's attorney, Michael McGovern, have agreed upon the following:

1. The defendant will plead guilty to the following count in the Information:

a) Count One. Committing an act with respect to prescription drugs, while the drugs were held for sale after shipment in interstate commerce, that resulted in the prescription drugs being misbranded, in violation of 21 U.S.C. §§ 331(k) and 353(b).

The punishment for this offense is as follows: A term of imprisonment of up to 12 months, a fine of up to $1,000, a term of supervised release of up to one year, and a mandatory $50 special assessment.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the Indictment in case no. 3:19-cr-51.

3. The defendant has read the Information, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. As to Count 1, the elements to be proven beyond a reasonable doubt are that the defendant, (1) performed an act with respect to prescription drugs, that is, buprenorphine, also known as Suboxone;

clonazepam, also known as Klonopin; pregabalin, also known as Lyrica; and diazepam, (2) the act was performed while the drugs were held for sale after they had been shipped in interstate commerce; (3) that the defendant's act caused the prescription drugs to be deemed misbranded. The defendant understands and agrees that issuing an invalid prescription (*i.e.* issuing a prescription outside the course of professional medical practice and for no legitimate reason) shall be deemed to be an act which results in the drug being misbranded, contrary to the provisions of 21 U.S.C. § 353(b)(1).

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) Before a medical doctor (MD), or another medical professional, may write prescriptions for controlled substances, he or she must first obtain a DEA Registration Number. Defendant has been a medical doctor (MD) for over 30 years and had obtained a DEA Registration Number.

b) Beginning in approximately March 2018, in the Eastern District of Tennessee, the defendant agreed with Michael LaPaglia (charged separately),[1] another MD,

[1] LaPaglia was charged separately with conspiring to distribute and dispense controlled substances, specifically buprenorphine, clonazepam, and diazaepam, in violation of 21 U.S.C. §§ 841; 846, and for making a materially false statement and representation in connection with the delivery of health care benefits, in violation of 18 U.S.C. § 1035. (Eastern District of Tennessee Case No. 3:18-cr-172). LaPaglia pleaded guilty to those offenses on November 19, 2018. (Case No. 3:18-cr-172, Doc. 4, Plea Agreement.) While on Pretrial release, LaPaglia lied to his

to open a mobile Suboxone service, named L & B Healthcare. LaPaglia had no authority to distribute or dispense controlled substances because he had surrendered his DEA Registration Number in 2014. The defendant gave LaPaglia pre-signed prescriptions containing defendant's name and DEA Registration Number. Customers would pay $300 cash per month in exchange for prescriptions for buprenorphine, also known as Suboxone, clonazepam, also known as Klonopin, diazepam, and pregabalin, also known as Lyrica.

c) Defendant did not personally examine many of the customers to determine whether a controlled substance prescription was within the scope of professional practice or for a legitimate medical purpose. Instead, the defendant relied on representations made by LaPaglia.

d) On or about October 9, 2018, the defendant met with a drug patient, J.K., at or near LaPaglia's home. The defendant did not conduct an exam of J.K., did not conduct a urine drug screen to determine whether J.K. had any illicit drugs in her system or that she was taking prescription drugs as prescribed; and the defendant did not establish a valid doctor-patient relationship. The defendant simply signed a prescription for prescription drugs, specifically: buprenorphine, also known as Suboxone; clonazepam, also known as Klonopin; pregabalin, also known as Lyrica; and diazepam. J.K. then filled her prescription at a pharmacy.

---

supervising officer to avoid a drug screen and then falsified a positive COVID-19 test document to cover up the lie. (Case No. 3:18-cr-172, Docs. 45 and 57.) LaPaglia is set to be sentenced on May 27, 2021; he faces a Guidelines range of six to 12 months' imprisonment. (*See* Doc. 4, Plea Agreement, ¶¶ 3(d), (e), pg. 4) (agreeing on applicable drug quantities and enhancements for sentencing purposes).

e) The defendant stipulates and agrees that the prescription drugs were issued to J.K. pursuant to an invalid prescription because the prescription was not issued within the course of professional responsibility and for a legitimate purpose. Accordingly, the defendant agrees he caused the prescription drugs to be misbranded.

f) The defendant further agrees that the prescription drugs were held for sale after they had been shipped in interstate commerce.

g) The parties agree that incident described above constitutes the scope of defendant's provable criminal conduct.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to be indicted by a grand jury for these crimes;

b) the right to plead not guilty;

c) the right to a speedy and public trial by jury;

d) the right to assistance of counsel at trial;

e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

f) the right to confront and cross-examine witnesses against the defendant;

g) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

h) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

d) The defendant's DEA Registration expired on September 1, 2019. The defendant agrees not to reapply for his DEA Registration Number for a total of five years from the date of the DEA Registration expiration.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate

fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a

certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's convictions or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's convictions or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this

agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of

the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
ACTING UNITED STATES ATTORNEY

By:

4/28/2021
Date

ANNE-MARIE SVOLTO
Assistant United States Attorney

4/23/2021
Date

CHARLES BROOKS, JR.
Defendant

4/23/2021
Date

MICHAEL MCGOVERN
Attorney for the Defendant